UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LESLIE M. CROSS,

                Plaintiff,

      v.                                   **DECISION AND ORDER**
                                                     **08-CV-0425 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## I. Introduction

Plaintiff Leslie M. Cross challenges an Administrative Law Judge's ("ALJ") determination that she is not entitled to disability insurance benefits ("DIB"), or supplemental security income ("SSI"), under the Social Security Act ("the Act"). Plaintiff alleges she has been disabled since August 1, 1999, because of back problems, psychiatric problems including panic disorder with agoraphobia, arthritis, chronic pancreatitis, and chronic colitis. Plaintiff met the disability insured status requirements of the Act through December 31, 2001.

## II. Background

Plaintiff filed applications for DIB and SSI on February 28, 2002. Her applications were denied initially, and upon reconsideration. Plaintiff appeared before an ALJ on January 15, 2004, and received an unfavorable decision on her applications for benefits on September 23, 2004. The Appeals Council declined to review the ALJ's decision on February 25, 2005, and the September 23, 2004 decision became the final decision of the Commissioner. On October, 18, 2005, the United States District Court for the Northern District of New York reversed the

final decision of the Commissioner and remanded the matter for a re-hearing. Plaintiff and a paralegal representative appeared before ALJ Thomas P. Zolezzi on October 24, 2006.  A vocational expert also testified.  The ALJ considered the case *de novo*, and on December 12, 2006, issued a decision finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on February 27, 2008.

On April 17, 2008, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on August 4, 2008, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted Plaintiff's Brief on September 19, 2008.  On November 3, 2008, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and deemed the matter submitted.

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court affirms the decision of the Commissioner.

---

[1] The ALJ's December 12, 2006, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

### III.  Discussion

#### A.  Legal Standard and Scope of Review:

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability,

---

[3] This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner]next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work active-ties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

## B. Analysis

### 1.   Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2001 (R. at 184);[4]  (2) Plaintiff has not engaged in substantial gainful activity since August 1, 1999, the alleged onset date (20 C.F.R. §§ 404.1520(b) and 404.1571 *et.seq,* 416.920(b) and 416.971 *et.seq.*) (R. at 184); (3) Plaintiff has the following severe impairments: arthritis, low back pain, recurrent pancreatitis, depression, panic disorder with agoraphobia, and history of alcohol use (20 C.F.R. § 404.1520(c) and 416.920(c)) (R. at 184); (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526), 416.920(d), 416.925 and 416.926 (R. at 184); (5) After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform light work[5], and is further

---

[4] Citations to the underlying administrative are designated as "R."
[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of

5

limited by the following non-exertional impairments: (a) Any work must be simple entry-level work.  She can make a simple decision but no complex decision making; (b) the work should be low stress with no planning, no scheduling, no report writing, no supervising, and no multitasking; (c) there should be little or no change in the work environment or setting; (d) she can have occasional but not frequent interaction with the public; (e) she can have occasional but not frequent interaction with co-workers; and  can work in proximity of co-workers but only occasionally in coordination or conjunction with them (R. at 185); (6) Plaintiff is unable to perform any past relevant work (20 C.F.R. § 404.1565) (R. at 189); (7) Plaintiff was born on October 13, 1958 and was 40 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. § 404.1563) (R. at 189); (8) Plaintiff has a 12th grade education and is able to communicate in the English language (20 C.F.R. § 404.1564) (R. at 189); (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2) (R. at 189); (10) Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 404.1560(c) and 404.1566) (R. at 189); and (11) Plaintiff has not been under a disability, as defined in the Social Security

---

the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  See 20 C.F.R. § 404.1567(b).

Act, from August 1, 1999, through the date of this decision (20 C.F.R. § 404.1520(g)) (R. 190). Ultimately, the ALJ determined Plaintiff was not entitled to a period of disability and disability insurance benefits as set forth in sections 216(i) and 223(d) of the Social Security Act, nor entitled to supplemental security income based on disability under section 1614(a)(3)(A) of the Act (R. at 190-191).

### 2. Plaintiff's Claims

Plaintiff challenges the decision of the ALJ on the basis that it is not supported by the substantial evidence of record. Specifically, Plaintiff alleges (a) the ALJ erred in his decision because his discussion of medical and psychological findings from a State agency orthopedic physician and State agency psychologist was selective in that the ALJ apparently accepted some, but not all, of the examiners' opinions, and (b) the ALJ improperly relied on the testimony of the vocational expert because the jobs proposed by the vocational expert as being available in the national and local economies to an individual with Plaintiff's limitations did not take into account the ALJ's findings with respect to Plaintiff's non-exertional limitations. Plaintiff asserts that the ALJ's determination that she is "not disabled" at step five in the sequential evaluation must be reversed as it is not supported by the substantial evidence in the record. <u>See</u> Plaintiff's Brief, pp. 4-7.

### a. The ALJ Properly Evaluated the Opinions of the State Agency Orthopedic Physician and State Agency Psychologist

Plaintiff's first challenge to the ALJ's decision is that he was selective in his evaluation of the opinions of the State agency examining orthopedic physician and State agency examining psychologist.  See Plaintiff's Brief, pp. 4-6.  Plaintiff argues that the ALJ engaged in a selective review of the record when he did not incorporate into his hypothetical (1) the examining orthopedic physician's opinion that Plaintiff's ability to push and pull with her lower extremities is limited, and (2) the examining psychologist's opinion that Plaintiff "will have difficulty maintaining a regular schedule" and that she has psychiatric problems that "will likely significantly interfere with [her] ability to function on a daily basis" (R. at 211, 347).  Thus, Plaintiff argues, the hypothetical presented to the vocational expert was flawed because it omitted critical exertional and non-exertional limitations, and this matter requires a remand to the Commissioner for further administrative activity.  See Plaintiff's Brief, pp. 4-7.  The Commissioner asserts the ALJ properly evaluated the opinions the State agency examiners and reasonably concluded Plaintiff retained the residual functional capacity to perform a wide range of light work.  See Defendant's Brief, pp. 7-15.

**(1)   ALJ Did not Selectively Review the Record or Present an Improper Hypothetical Regarding Plaintiff's ability to push and pull with her lower extremities**

It is the duty of an ALJ to review and evaluate a claimant's record as a whole.  See 20 C.F.R. § 404.1527.  An ALJ must consider and give appropriate weight to the opinions of treating sources, examining sources, and non-examining sources.  Id.  An ALJ's findings, as articulated in his or her decision, must demonstrate that he or she considered all of the evidence in the record, but

8

the ALJ is not required to discuss every piece of evidence.  See Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  An ALJ must discuss the evidence that supports his or her decision, the uncontroverted evidence that supports the claimant's application for benefits, and the significantly probative evidence that he or she rejects.  Id.

Plaintiff underwent a thorough physical examination by a State agency orthopedic specialist, Dr. Amelita Balagtas, on July 6, 2006, approximately six months before the ALJ wrote his decision (R. at 207-209).  The ALJ noted the examination revealed that Plaintiff had a moderate restriction in forward and lateral flexion of the lumbar spine (R. at 188, 208).  She exhibited tenderness over the lumbosacral spine, and paraspinal spasm, but no sacroiliac or sciatic notch tenderness.  Id.  The doctor observed Plaintiff was able to straight leg raise[6] up to 70 degrees, but she complained of pain behind her knees, rather than in her lower back and upper thighs.  Id.  She had full range of motion in her hips, knees and ankles, with peripatellar tenderness in her left knee.  Id.  Strength was 5/5 in the proximal and distal muscles bilaterally, with no sign of muscle atrophy in the lower extremities.  Id.  Plaintiff's sensation was intact bilaterally, and her reflexes were physiologic and equal (R. at 188, 209).  Examination of her cervical spine and upper extremities revealed normal results (R. at 188, 208).  Plaintiff's hand and finger dexterity was intact, and she had full grip strength bilaterally.  Id.  Dr. Balagtas diagnosed Plaintiff with low back pain,

---

[6] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

9

degenerative disc disease, and degenerative arthritis of the spine and left knee (R. at 209).  In a Medical Source Statement of Ability To Do Work-Related Activities (Physical), Dr. Balagtas opined Plaintiff could occasionally lift and/or carry 20 pounds, could frequently lift and/or carry 10 pounds, could stand and/or walk about six hours in an eight-hour workday, could sit about six hours in an eight-hour workday, and was limited in pushing and pulling with her lower extremities because of a decreased range of motion in her spine, lumbosacral spine tenderness, and tenderness in her left knee (R. at 188, 210-211).  Plaintiff could occasionally climb, balance, kneel, crouch, crawl and stoop, and had no manipulative limitations, visual or communication limitations, or environmental limitations (R. at 188, 211-213).

In his decision, the ALJ noted Plaintiff's examination results, as recorded by Dr. Balagtas, were consistent with examination results provided by Plaintiff's treating nurse practitioner on March 22, 2005 (R. at 188, 233-234).  At that time, Plaintiff complained of low back pain radiating into her legs, but her straight leg raise test was negative bilaterally (R. at 234).  An x-ray of Plaintiff's lumbosacral spine taken on April 29, 2005 revealed narrowing of disc space at L5-S1, but no spondylolysis, spondylolisthesis, or disc herniation was present (R. at 354).  A repeat x-ray series taken on July 20, 2005 showed diffuse blastic (ivory) vertebrae[7] in the proximal sacrum (R. at 215).  Plaintiff's vertebral bodies were

---

[7] The ivory vertebra sign is seen at conventional radiography and refers to an increase in opacity of a vertebral body that retains its size and contours, with no change in the opacity and size of adjacent intervertebral disks.  The increased opacity may be diffuse and homogeneous and involve most or all of the vertebral body, giving it a white appearance as opposed to the normal or possibly osteoporotic appearance of the rest of the vertebral column.  See http://radiology.rsna.org/content/235/2/614.full.

intact with no collapse, and disc spaces were maintained.  Id.  While the x-ray showed some degenerative arthritic changes at the facet joints in the lower lumbar spine, there were no significant degenerative spondylotic changes (R. at 215).

Plaintiff claims the ALJ selectively omitted from his hypothetical presented to the vocational expert the opinion of Dr. Balagtas that Plaintiff was limited in pushing and pulling with her lower extremities.  See Plaintiff's Brief, p. 5.  However, it is clear from his decision that the ALJ accepted in its entirety Dr. Balagtas' opinion that Plaintiff could perform the requirements of a wide range of light work.  Dr. Balagtas' opinion was based on her examinations of Plaintiff and necessarily included the her opinions of Plaintiff's limitations.  Moreover, when the ALJ presented his hypothetical to the vocational expert, he specified any jobs available to Plaintiff must be "unskilled light work" (R. at 190, 423).  Relatively few unskilled jobs classified as "light work" are performed in a seated position and require pushing or pulling with the lower extremities.  Jobs in the "light work" category that are performed in a seated position and use hand and/or leg and foot controls are generally semi-skilled or skilled[8]  See SSR 83-10.  Thus, the Court finds the ALJ did not selectively omit a critical exertional limitation from his hypothetical, but was guided by his examination of Plaintiff's entire medical

---

[8] The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.  See SSR 83-10.

11

record and the opinions of Dr. Balagtas. While the ALJ did not present in his hypothetical to the vocational expert specific reference to the push-pull limitation, those exertional limitations were unlikely to impact the work available to Plaintiff in the unskilled "light work" category.

### (2) ALJ Did not Improperly Omit from the Hypothetical Dr. Brand's Opinion Regarding Daily Function:

Plaintiff further complains that the ALJ selectively omitted from the hypothetical to the vocational expert the opinion of State agency examining psychologist, Dr. Kerry Brand, that Plaintiff "will have difficulty maintaining a regular schedule," and "The results of the present evaluation appear to be consistent with some psychiatric problems which will likely significantly interfere with claimant's ability to function on a daily basis" (R. at 347). See Plaintiff's Brief, pp. 5-6. Plaintiff argues that a person who has difficulty maintaining a regular schedule, and who has psychiatric difficulties that affect functioning on a daily basis, will be unable to participate in substantial gainful employment. Id. Defendant responds that the ALJ specifically addressed Dr. Brand's opinion in its entirety, along with the report of Plaintiff's social worker, Karen Harpe, and the medical opinion of State agency psychological consultant, Dr. Mark Tatar, and found it did not preclude a wide range of unskilled work activity. See Defendant's Brief, pp. 12-15.

The Court notes Dr. Brand's report of her examination of Plaintiff reveals relatively limited psychiatric findings (R. at 343-348). In her health history, Plaintiff reported symptoms of depression, agoraphobia, and anxiety (R. at 344-

345). She told Dr. Brand she was independent with dressing, bathing, and grooming, could prepare and cook simple foods, and could do the laundry (R. at 346). She reported she received assistance from her daughter and her daughter's father with general cleaning activities and grocery shopping. Id. Plaintiff stated she has two friends who visit with her regularly, as well as a large family who visit her in small groups so as not to increase her anxiety. Id. She told Dr. Brand she no longer engaged in hobbies because she could not sustain her concentration (R. at 347). Upon a Mental Status Examination, Dr. Brand found Plaintiff to be cooperative, with adequate social skills and manner of relating to the doctor (R. at 345). The doctor noted Plaintiff's grooming was fair, her gait, posture, and motor behavior were normal, and she made appropriate eye contact. Id. Plaintiff's speech was fluent, and her receptive and expressive language skills were normal. Id. Her thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia. Id. Plaintiff's affect was of full range and appropriate. Id. Her mood during the examination was sad and she became tearful when discussing her symptoms of depression (R. at 346). Her attention and concentration were intact, but she exhibited mildly impaired recent and remote memory skills because of anxiety in the evaluation setting. Id. Dr. Brand estimated Plaintiff's cognitive functioning to be in the average to below average range. Id. Plaintiff's insight was good and her judgment was fair. Id.

In her Medical Source Statement, Dr. Brand opined:

With regard to vocational functioning, claimant can follow and understand simple directions and instructions and perform simple tasks. She has

13

> difficulty maintaining attention and concentration and will have difficulty maintaining a regular schedule. She can learn new tasks and perform complex tasks with supervision. She may have difficulty making appropriate decisions, relating adequately with others, and dealing appropriately with stress in the workplace setting…
>
> The results of the present evaluation appear to be consistent with some psychiatric problems, which will likely significantly interfere with claimant's ability to function on a daily basis.
> (R. at 347)

In his hypothetical presented to the vocational expert, the ALJ adopted the reasonable vocational limitations noted by Dr. Brand (R. at 423). As an example, the ALJ's hypothetical required the vocational expert to consider as available to Plaintiff only those jobs that would be simple entry level work with no complex decision making. Id. He noted the work should be low stress, with no planning, scheduling, report writing, supervising, and no multi-tasking. Id. The hypothetical included restrictions that there be little or no change in the work environment or setting, and only infrequent interaction with the public and co-workers. Id. The ALJ further specified Plaintiff could work in proximity of co-workers, but only occasionally in coordination or conjunction with them. Id.

With respect to Plaintiff's claim that the ALJ should have included in the hypothetical a limitation on regular work attendance, there is little in Dr. Brand's report to suggest Plaintiff's psychological symptoms were so debilitating that she could not engage in any substantial gainful activity (R. at 343-348). Further, Plaintiff had been treated for panic disorder with agoraphobia and depression at Columbia County Mental Health Center in 2002 and 2003 (R. at 120). During that time, she received both mental health treatment and case management services for financial needs, housing and transportation. Id. Plaintiff elected to

14

discontinue mental health treatment in February 2003, when her therapist left the Mental Health Center. Id. Her case management services were terminated in December 2003 when she was able to function more independently, leave her home, and meet her own needs adequately. Id.

Plaintiff's medical and psychiatric records were reviewed by a State agency consultant, Mark Tatar, Ph.D., on May 24, 2005 (R. at 362-380). Based upon Plaintiff's records, including the examination by Dr. Brand, Dr. Tatar opined Plaintiff's daily functioning is not severely impaired by psychiatric factors, and that she is able to follow simple instructions, sustain a pace, and relate to others in a work situation (R. at 380). While Dr. Tatar did not examine or treat Plaintiff, it is well-settled that an ALJ may rely upon the opinions of the state agency's medical and psychological consultants, since they are deemed to be qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2). Moreover, the opinion of a non-examining consultant may constitute substantial evidence in support of the ALJ's determination where, as in this matter, other evidence in the record supports it. See Diaz v. Shalala, 59 F.3d 307, 313 n. 5 (2d Cir. 1995); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). Further, it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).

Thus, the Court finds the ALJ did not engage in a selective presentation of Plaintiff's non-exertional limitations when he crafted his hypothetical for the

vocational expert. Instead, the ALJ carefully examined and gave appropriate consideration to Dr. Brand's examination notes, Plaintiff's psychiatric treatment notes including the report from Columbia County Mental Health Center, and the opinion of Dr. Tatar when setting forth reasonable non-exertional limitations within his hypothetical.

### b. The ALJ Properly Relied on the Testimony of the Vocational Expert

Plaintiff's second challenge to the ALJ's decision is that he improperly relied on the testimony of the vocational expert that there are a substantial number of jobs available to Plaintiff in the national and local economies. Plaintiff complains that the jobs proposed by the vocational expert have a Specific Vocational Preparation ("SVP") level of two ("SVP-2"), and as such, rely on skills and abilities precluded by the ALJ's findings with respect to Plaintiff's non-exertional limitations. See Plaintiff's Brief, pp. 1-2, 6-7. Defendant argues that the jobs identified by the vocational expert with an SVP-2 are entry-level unskilled jobs and rely on abilities that are consistent with Plaintiff's non-exertional limitations. See Defendant's Brief, pp. 15-17.

The Dictionary of Occupational Titles ("DOT") defines Specific Vocational Preparation as the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See http://www.occupationalinfo.org/appendxc_1.thml#II. The DOT has set out nine levels of training from SVP-1, which requires training time of only a short demonstration of the job tasks, to SVP-9, which requires training time of over ten

16

years.  Id.  A job with an SVP-2 requires "anything beyond a short demonstration up to and including one month."  Id.  The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time… [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed."  See 20 C.F.R. § 404.1568(a).  Using the skill level definition in 20 C.F.R. § 1568(a), the SSA has determined unskilled work corresponds to an SVP of 1 or 2.  See SSR 00-4p.

However, the component of the jobs identified as suitable for a person with Plaintiff's limitations, and with which she takes exception (although she does not properly argue the point in her brief), is actually the General Education Development ("GED") scale.  See Plaintiff's Brief, pp. 6-7.  The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.  See http://www.occupationalinfo.org/appendxc_1.thml#II.  The jobs identified by the vocational expert, including mail clerk (DOT#209.687-026), preparer (DOT#700.687-062), and brake lining coater (DOT#574.685-010), have a GED reasoning scale (GED-R) of 2 or 3 which requires reasoning development consistent with applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and dealing with "problems involving a few concrete variables in and from standardized situations" (R. at 422).  See http://www.occupationalinfo.org; http://www.occupationalinfo.org/appendxc_1.thml#II.  Plaintiff asserts that the

17

jobs identified by the vocational expert with an SVP of 2, and a GED-R of 2 or 3, are inconsistent with the ALJ's findings that she is limited to simple, low-stress, entry-level work with no complex decision-making, no planning, scheduling or report writing, no multi-tasking, little change in the work environment, and infrequent interaction with the public or co-workers (R. at 187). See Plaintiff's Brief, p. 6.

The record reveals Plaintiff has the equivalent of a 12th grade education (R. at 50, 147, 343). She had been treated as an outpatient at Columbia County Mental Health Center for panic attacks with agoraphobia and depression, but discontinued treatment in February 2003, when her therapist left the mental health center (R. at 120). Plaintiff's case management services were terminated by Columbia County Mental Health Center in December 2003, when she was determined to be self-sufficient enough to care for her own housing, transportation, and medical needs. Id. At the time of her State agency Mental Status Examination on April 29, 2005, Dr. Brand assessed that with regard to Plaintiff's vocational functioning, she could understand and follow simple directions and instructions, and perform simple tasks (R. at 347). Dr. Brand stated Plaintiff would have difficulty maintaining attention, concentration, and a regular schedule, but also opined Plaintiff could learn new tasks and perform complex tasks with supervision. Id. State agency consultant, Dr. Tatar, reviewed Plaintiff's medical records, as well as Dr. Brand's assessment, and completed both a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment (R. at 362-377, 378-380). Dr. Tatar noted Plaintiff had no history of

inpatient psychiatric hospitalizations, and was not currently receiving outpatient psychiatric care (R. at 380). He opined that based on Plaintiff's medical and other evidence, her daily functioning was not severely impaired by psychiatric factors, and that she could follow simple instructions, maintain a pace, and relate to others in a work situation. Id.

Given the evidence of record, the Court finds no error in the ALJ's finding that Plaintiff retains the residual functional capacity to perform unskilled light work identified as SVP-1 or SVP-2. Further, the Court finds that jobs identified as GED-R2 or GED-R3, which require Plaintiff to apply a commonsense understanding to carry out detailed but uninvolved written or oral instructions, and to deal with problems involving a few concrete variables in or from standard situations, are not incompatible with the non-exertional limitations established by the ALJ that Plaintiff's work must be simple, low-stress, and entry-level, with no complex decision-making, no planning, scheduling or report writing, no multi-tasking, little change in the work environment, and infrequent interaction with the public or co-workers. Thus, the ALJ did not err when he relied on the testimony of the vocational expert that significant numbers of unskilled jobs exist in the national and local economies that could be performed by Plaintiff.

## Conclusion

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight

to all the medical evidence, including Plaintiff's treating physicians and the State agency medical consultant, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error, and further finding that substantial evidence supports the ALJ's decision, the Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:     November 12, 2009
           Albany, New York